UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:08-cv-0180 |
| | ) | |
| $22,050.00 UNITED STATES CURRENCY, | ) | Judge Thomas A. Wiseman, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

This is a civil forfeiture action *in rem* brought pursuant to 21 U.S.C. § 881(a)(6)[1] and 18 U.S.C. § 981.[2] No person having made a Verified Claim to the defendant property or otherwise appeared in this action within the statutory deadline for doing so, the Clerk of Court, upon the United States' motion, entered a default on August 8, 2008 as to all persons potentially having a claim to the defendant currency, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. The matter is before the Court on Claimant James Christopher Rowland's Motion to Set Aside Entry of Default (Doc. No 10), and the Government's Motion to Strike Rowland's Claim (Doc. 12).

**I.     PROCEDURAL BACKGROUND**

The United States filed a Verified Complaint *in Rem* on February 21, 2008 (Doc. No. 1) against the defendant currency, which had been seized from Claimant James Christopher Rowland (hereafter, "Rowland") on September 20, 2008 under the authority of 21 U.S.C. § 881(a)(6) and/or 18 U.S.C. § 981(a)(1)(A). On February 29, 2008, the Court granted the Government's application for issuance of a summons and warrant for arrest *in rem* (Doc. No. 5). The complaint and warrant were returned executed on March 31, 2008.

---

[1] Section 881(a)(6) of Title 21 authorizes the forfeiture of "[a]ll moneys . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [21 U.S.C. § 841], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [U.S.C. § 841(a)(1)]."

[2] Section 981(a)(1)(A) of Title 18 provides that any property "involved in a transaction or attempted transaction" in violation of federal statutory provisions prohibiting money laundering, racketeering, and unlicensed money transmitting business, is subject to forfeiture.

Pursuant to Rule G(4)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, "a judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint." The notice must describe the property with reasonable particularity, state the times established by rule for filing a claim and an answer to the complaint, and name the government attorney to be served with the claim and answer. The published notice must appear once a week for three consecutive weeks "in a newspaper generally circulated in the district where the action is filed, where the property was seized, or where property that was not seized is located." Supp. R. G(4)(a)(ii) – (iv). In accordance with Supplemental Rule G(4)(a), the United States provided public notice to all persons of the forfeiture action through an advertisement published in *The Daily News Journal* on March 25, 2008, April 1, 2008 and April 8, 2008. The United States filed the Notice of Publication and Affidavit of Publication with the Court. (Doc. No. 7.)

In addition, the United States was required to send "direct notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." Like the public notice, the direct notice sent to potential claimants must state (1) the date the notice was sent; (2) the deadline for filing a claim; (3) that an answer or a motion under Rule 12 must be filed no later than 20 days after filing the claim; and (4) the name of the United States Attorney to be served with the claim and answer. Supp. Rule G(5)(b)(ii). Pursuant to Supplemental Rule G(4)(b)(iii), the direct notice must be "sent by means reasonably calculated to reach the potential claimant" and may be sent directly to the potential claimant *or* to the attorney representing him with respect to the seizure of the property or in any related investigation, administrative forfeiture proceeding or criminal case.

The United States was aware that Rowland was a potential claimant because he had filed a verified claim with the Drug Enforcement Administration, pursuant to 18 U.S.C. § 983(a)(2), shortly after that agency seized the defendant currency in September 2007. It was also aware that Rowland was represented by counsel. The United States did not file a Certificate of Service notifying the Court that it had sent direct notice of the Verified Complaint to Rowland or his attorney. In its Application to Clerk for Entry of Default, however, the United States asserts that it had served a copy of the Verified Complaint for Forfeiture *in Rem* and Notice of Seizure via certified mail, return receipt requested, upon James

Christopher Rowland at 3163 South Church Street, Suite A, Murfreesboro, Tennessee 37127 on March 10, 2008. Attached to the Application is a copy of a certified mail return receipt showing that on March 11, 2008 Tonya Landrey, an employee in Rowland's office, signed for the certified mailing addressed to Rowland.

The United States also asserts that a copy of the Certified Complaint was sent to Rowland's attorney on the same date it was sent to Rowland. In response to Rowland's Motion to Set Aside Entry of Default, the United States filed the Declaration of Anne Baxter, a paralegal in the Asset Forfeiture Department of the U.S. Attorney's Office in the Middle District of Tennessee, in which Ms. Baxter attests that on March 10, 2008, besides mailing the requisite documents via certified mail to Rowland's office address on March 10, 2008, she also mailed a copy of the notice letter, Verified Complaint *in Rem* and supporting Affidavit via regular mail to Rowland's attorney, Peter Strianse. (Doc. No. 13-3, at ¶ 3.)

The basis for the United States' application for default was that as of August 7, 2008, nearly five months after notice of the Verified Complaint was served on Rowland and a copy mailed to his attorney, and four months after the deadline for doing so, Rowland had not filed a claim to the defendant funds nor an answer to the Verified Complaint. The government's position is premised on the statute and applicable rules setting forth the procedure for a claimant to protect his interest in an item or funds seized by the government after the government files a civil forfeiture complaint in federal court. The pertinent statute setting forth the deadline for filing a verified claim and answer states as follows:

> (A) In any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims [Supp. Rule C(6)(a) and G(5)], except that *such claim may be filed not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint*.
>
> (B) A person asserting an interest in seized property, in accordance with subparagraph (A), shall file an answer to the Government's complaint for forfeiture *not later than 20 days after the date of the filing of the claim*.

18 U.S.C. § 983(a)(4) (emphasis added).

The clerk of court, pursuant to the application, entered default on August 8, 2008.

**II. CLAIMANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT**

On August 12, 2008, Rowland, through counsel, filed the Motion to Set Aside Entry of Default.

He filed a Verified Claim and an Answer to the Complaint the same day. (Doc. Nos. 10, 11 and 12.) In his Motion, Rowland argues that:

> (1) The United States was aware that Mr. Strianse represented him with respect to the items seized by the DEA on September 20, 2007, including the defendant currency, but no government representative contacted his counsel before seeking entry of a default judgment. (Doc. No. 10, at ¶ 1.)
>
> (2) Mr. Strianse did not receive a copy of the notice letter or Verified Complaint *in Rem*, nor was he notified by Rowland that Rowland had received the notice and complaint.
>
> (3) The Verified Complaint *in Rem* was served upon Rowland's employee rather than Rowland himself, which was not in compliance with Rule 4(e) of the Federal Rules of Civil Procedure or Local Civil Rule 4.01(c). (Doc. No. 10, at ¶ 3.)
>
> (4) Rowland "clearly" believed that when he signed his Verified Claim seeking return of the property from the agency, he had taken all necessary steps to preserve his rights to challenge the forfeiture of his property. (Doc. No. 10, at ¶ 2.)

In its response in opposition to the Claimant's Motion, the United States argues that (1) Claimant's erroneous belief that he had protected his right to challenge the forfeiture of the property by filing an administrative claim is belied by the clear language of the notice letter that accompanied Claimant's copy of the Verified Complaint; and (2) Fed. R. Civ. P. 4 does not apply in this situation; rather, service of the Verified Complaint is governed by Supplemental Rule G(4)(b)(iii), which requires that the direct notice be "sent by means reasonably calculated to reach the potential claimant" and may be sent directly to the potential claimant *or* to the attorney representing him. Here, a copy of the Complaint was sent both directly to Claimant and to his attorney. Further, Claimant does not assert that his employee, Tonya Landrey, failed to pass on to him the packet from the DEA.[3]

### III. DISCUSSION

The procedure governing the entry of default is set forth in Rule 55 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). Only after a default has been entered may a default *judgment* be entered either by the Clerk, under certain circumstances, or by the Court. Fed. R. Civ. P. 55(b).

---

[3] In fact, Rowland has not filed any affidavit in support of his motion to set aside the default.

The rule further provides that the court may set aside a default (as opposed to a default judgment) "for good cause." Fed. R. Civ. P. 55(c). Generally speaking, the decision whether to set aside an entry of default is within the Court's discretion. *INVST Financial group v. Chem-Nuclear Systems*, 815 F.2d 391, 398 (6th Cir. 1987); *Johnson v. City of Detroit*, 892 F.2d 79 (unpubl.), 1989 WL 153550, at *2 (6th Cir. Dec. 20, 1989); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). The Court's exercise of its discretion should be based on its assessment of the circumstances and facts of the case and the credibility and good faith of the parties. *Enron*, 10 F.3d at 95. In addition, the Sixth Circuit has stated that district courts must consider three factors in determining whether to set aside the entry of default under Rule 55: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. *INVST*, 815 F.2d at 398; *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 192 (6th Cir. 1986).

The United States argues in the present case that Claimant cannot show "good cause" for setting aside the default and, further, that the Sixth Circuit has indicated that strict compliance with Supplemental Rule C(6) is required for a claimant even to have standing to oppose entry of default. *See, e.g.*, *United States v. $5,730.00 in U.S. Currency*, 109 Fed. Appx. 712, 714 (6th Cir. July 29, 2004) (noting that "[t]he dictates of Rule C(6) are relatively plain and the case law applying it repeatedly states that compliance must be strict," and therefore affirming the district court's decision to strike the claimant's answer and enter default against him for lack of statutory standing, based on his failure to file a verified statement of claim within thirty days of service of the complaint); *United States v. One Assortment of Eighty-Nine Firearms and Six Hundred & Thirty-Eight Rounds of Ammunition*, 846 F.2d 24, 26 (6th Cir. 1988) (likewise observing that courts have generally "held claimants to strict compliance with the provisions of Rule C(6)"). *See also* United States v. $104,674.00, 17 F.3d 267, 268 (8th Cir. 1994) ("It is not an abuse of discretion for the district court to require strict compliance with Supplemental Rule C(6)."); *United States v. Commodity Account No. 549 54930*, 219 F.3d 595, 598 (7th Cir. 2000) ("[S]trict compliance with Supplemental Rule C(6) is typically required.").

The Sixth Circuit has also held that, in some circumstances, district courts have the discretion to excuse strict compliance with Supplemental Rule C(6). *United States v. Thirty-Five Firearms*, 123 Fed.

Appx. 204, 206–07 (6th Cir. Feb. 15, 2005). In that particular case, the court held that the district court had not abused its discretion in striking the claimants' answer for failure to file a verified claim,stating:

> An abuse of discretion occurs when a relevant factor that should have been given appropriate weight is not considered or when the court does not analyze the applicable factors. Here, the district court listed and considered numerous factors before granting the United States' motion to strike the answer, including the time the [claimants] became aware of the seizures, whether the government encouraged the delay, the reasons for the delay, whether the [claimants] advised the court and the government of their interest in the property before the claim deadline, and whether the government would be prejudiced by the late filing.

*Id.* at 207.

Consideration of these factors and other factors in the present case leads this Court to conclude that it would be an abuse of discretion to set aside the default. First, with respect to Rowland's claim that service was inadequate under the procedural rules, long-standing Supreme Court precedent states that notice of a legal proceeding satisfies due process even if such notice is not actually received so long as "notice is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted). *See also* Supp. R. G(4)(b)(iii)(A) (stating that direct notice to potential claimants "must be sent by means reasonably calculated to reach the potential claimant"). The United States sent notice via certified mail to Rowland's place of business, from which the defendant currency was seized in the first place, where Rowland's employee signed for the mailing. Certainly, the government's attempt at service, regardless of whether it was successful, was reasonably calculated to reach Rowland. Moreover, as indicated above, Rowland does not actually claim he did not promptly receive the government's mailing from his employee. Further, although Rowland's counsel apparently did not receive the copy of the Verified Complaint *in Rem* sent to him via regular mail, the United States was not actually required to notify both Rowland *and* his attorney—notice to either one sufficed under the Rules. *See* Supp. R. G(4)(b)(iii)(B) (providing that "[n]otice may be sent to the potential claimant *or* to the attorney representing the potential claimant").

As for Rowland's argument that he believed himself to be protected because he filed a verified administrative claim to the defendant currency last fall, before the United States instituted a formal forfeiture action, his purported reliance on the administrative claim was misplaced. As the Sixth Circuit has recognized, the filing of a claim in the initial administrative forfeiture action is not a substitute for filing

a verified claim in the judicial forfeiture action; rather, "the requirement of filing a verified claim under Rule C(6) is distinct and separate from that of filing an administrative claim with the seizing agency under 18 U.S.C. § 983(a)(2). Rule C(6) does not indicate that the filing of an earlier administrative claim excuses the verified claim requirement." *Thirty-Five Firearms*, 123 Fed. Appx. at 206–07.

Perhaps even more importantly, the Notice of Judicial Forfeiture Proceedings that accompanied Rowland's copy of the government's Verified Complaint put Rowland on notice that simply filing the earlier administrative claim was not sufficient to protect his interest in the defendant currency. The Notice stated in relevant part:

> If you assert an interest in, or right against, the above-referenced property, you <u>must</u> file a Verified Claim with the Court within **35 days** from the above Date of Notice. The claim must (a) identify the specific property claimed; (b) identify the claimant and state the claimant's interest in the property; (c) be signed by the claimant under penalty of perjury; and (d) be served on the government attorney listed below.
>
> In addition, within **20 days** after filing the Verified Claim you must file an Answer to the Complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.
>
> The complete procedure for filing a Claim and Answer is set forth more fully in Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure. Failure to strictly comply with Rule G(5) could affect your rights to contest forfeiture.

(Doc. No. 13-4, at 1–2 (emphasis in original).) Despite this notice, which could hardly have been worded more clearly, Rowland neither responded nor, apparently, contacted his attorney to discuss the matter with him. Although the government knew that Rowland was represented by an attorney and clearly could have contacted Mr. Strianse months ago to inquire whether he had received the civil forfeiture complaint and inquire whether he intended to file a claim on behalf of his client, it had no obligation to do so, having made the effort to serve him with a copy of the Verified Complaint *in Rem*. The government is not at fault for the fact that Mr. Strianse apparently never received that copy, nor can the government be charged with encouraging Rowland's failure to file a timely claim and answer.

Finally, while neither party has presented any argument regarding prejudice, the government does contend that excusing a delay of this length without good reason would set bad precedent and effectively undermine the entire forfeiture process.

In short, the Court agrees. Rowland has not shown good cause for setting aside the default nor identified any facts that provide this Court with the discretion to waive the strict time requirements for filing

a verified claim and answer. He has not shown that he would be prejudiced by a refusal to set aside the default. Under the circumstances, the Court is compelled strictly to apply the statutory deadline and the Supplemental Rules, under which the claimant lacks standing to contest entry of the default, having failed to file a timely claim and answer.

Rowland's motion to set aside the default (Doc. No. 10) is therefore **DENIED**. The United States' motion to strike Rowland's claim and answer (Doc. No. 13) is **GRANTED**, and **the Clerk is directed to enter final judgment in favor of the United States in the amount of $22,050.00** pursuant to Fed. R. Civ. P. 55(b)(1).

It is so **ORDERED**.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge